## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 3:22-cr-14 (MTT) |
| ANDREA PAIGE BROWNER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Defendant Andrea Browner, proceeding *pro se*, moves to suppress any evidence seized during the execution of a search warrant on her vehicle. Doc. 206. She also moves for a *Franks* hearing. *Id*. at 6. Browner filed her motion over a month after the motion deadline. Doc. 153 at 6. She sought no extension and offers no reason for her disregard of the deadline. Her motion (Doc. 206) is therefore **DENIED as untimely**. Nevertheless, the Court addresses the merits of her motion.

## I. BACKGROUND[1]

Based on their alleged participation in criminal activities as members of the Gangster Disciples organization, Browner and codefendants Philmon Chambers, Lesley Green, Robert Carlisle, and Shabazz Guidry were indicted on a charge of Racketeer Influenced and Corrupt Organizations Act ("RICO") Conspiracy in violation of 18 U.S.C. § 1962(d) on June 15, 2022. Docs. 1 at 7-20; 220 at 8-20. Browner and defendant Chambers were further charged with: Violent Crime in Aid of Racketeering (Murder) in violation of 18 U.S.C. § 1959(a)(1); Carry, Use, and Discharge of a Firearm During and

---

[1] These facts are drawn from the indictment and the parties' briefs and exhibits.

in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii); and Causing the Death of a Person Through Use of a Firearm in violation of 18 U.S.C. § 924(j)(1).  Doc. 1 at 20-23.  Pertinent here, the indictment alleges Browner was involved in the murder of Rodriguez Rucker.  Doc. 220 at 15-16.  The evidence against Browner is based, in part, on items found within her vehicle.  Docs. 206; 227.

On December 15, 2018, Texas Department of Safety Trooper Ricardo Fabbiani responded to a dispatch call concerning the location of Browner, who was wanted on an Athens, Georgia prostitution warrant.  Docs. 227 at 2; 227-3 ¶ 3.  The call "indicat[ed] that Browner was at a gas station in" Rusk County, Texas.  Doc. 227-3 ¶ 3.  Trooper Fabbiani, dressed in uniform, drove to the gas station in his government vehicle.  *Id*. ¶ 4.  When he arrived, Trooper Fabbiani spotted Browner and, after confirming through her driver's license that it was indeed her, "placed her under arrest."  *Id*. ¶ 5; Doc. 206 at 1.  Browner was then taken to jail and her "tan 2013 Kia Optima bearing a temporary Georgia license plate" was transported to the Rusk County Sheriff's Office.  Docs. 227 at 2; 227-3 ¶¶ 5, 8.

On December 17, 2018, Rusk County Police Officer Russell Smith, attaching his affidavit in support, applied for a search warrant for Browner's vehicle.  Docs. 206 at 1; 227-1.  Among other things, Officer Smith stated in his affidavit that he believed (1) cellphones, firearms, and ammunition would be found within the vehicle, and (2) the evidence found in the vehicle would be related to the homicide of Jason Vickers.  Doc. 227-1 at 1-3.  The Government later explained that the reference to Jason Vickers in the affidavit was an error and it was supposed to state Rodriguez Rucker.  Doc. 227 at 8.  Rusk County Judge Clay Gossett issued the search warrant that same day.  Docs. 206

at 1; 227-1 at 3-4. Officer Smith and Athens Detectives Paul Johnson and Scott Black then searched Browner's vehicle and found various items, including firearms, ammunition, and a cellphone. Docs. 206 at 2; 227 at 2-3; 227-2 at 2.

Trial is set for July 31, 2023. Doc. 153. Over a month after the deadline, Browner filed this motion to suppress. *Id*. at 6; Doc. 206.

## II. STANDARD

Generally, the party moving to suppress bears the initial burden of production and persuasion. *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).[2] This burden may shift "in some well-defined situations." *Id*.

"[T]he burden is on a defendant who seeks to suppress evidence obtained under a regularly issued warrant to show the want of probable cause." *de la Fuente*, 548 F.2d at 534 (quoting *Batten v. United States*, 188 F.2d 75, 77 (5th Cir. 1951)). The movant "must first discharge [her] initial burden of producing some evidence on specific factual allegations sufficient to make a prima facie showing of illegality." *Id*. at 534. And, "[i]n passing on the validity of [a] warrant, consideration may be given only to information brought to the attention of the [issuing judge]." *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982) (citations omitted). For the search warrant here, "all of the evidence furnished to the [issuing-court] [was] included in the affidavit." *Id*. Thus, the Court looks within the four corners of Officer Smith's affidavit to determine whether the requisite probable cause existed.

---

[2] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

### III. DISCUSSION

Browner argues the evidence seized during the execution of the search warrant on her vehicle is "fruit from a poisonous tree." Doc. 206. Specifically, Browner alleges the affidavit in support of the search warrant contained false statements, and requests a *Franks* hearing.[3] *Id*.

### A. Search Warrant

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons of things to be seized." U.S. Const. amend. IV.

"Affidavits supporting arrest warrants are presumptively valid." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). "A defendant may challenge the validity of the government's affidavit by making a substantial preliminary showing that a false statement was included in the warrant affidavit knowingly and intentionally or with reckless disregard for the truth." *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). The defendant must "point[] specifically to the portions of the affidavit claimed to be false" and must show "that the false statements were necessary to the finding of probable cause." *Kapordelis*, 569 F.3d at 1309. But "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997). Thus, courts will look "only

---

[3] Browner also appears to allege that a December 29, 2018 search of her cellphone was illegal. Doc. 206 at 2. Moreover, Browner makes a passing statement that "[i]t was not in good faith when [Officers Smith and Johnson] knowingly, intentionally, and with reckless disregard for the truth added" her cellphone, firearm, and ammunition to the search warrant's return and inventory item list. Docs. 206 at 4; 227-2. However, she provides no substantive argument on these issues and thus has failed to carry her "initial burden of producing some evidence on specific factual allegations sufficient to make a prima facie showing of illegality." *de la Fuente*, 548 F.2d at 534.

at the remaining portions of the affidavit" and "then determine whether including the omitted facts would have prevented a finding of probable cause." *Kapordelis*, 569 F.3d at 1309. "The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking." *Id*.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks and citation omitted). "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Id*. at 236. "[T]he duty of a reviewing court is simply to ensure that the magistrate had a *substantial basis* for concluding that probable cause existed." *Id*. at 238 (emphasis added).

Browner argues three statements in Officer Smith's affidavit were knowingly false: (1) that firearms, ammunition, and cellphones would be found in the vehicle, (2) that the prostitution ad was Browner's, and (3) that "the suspected vehicle may contain evidence related to the homicide of Jason Vickers." Docs. 206 at 3-5.

First, Browner asserts Officer Smith made false statements in his affidavit regarding her cellphone, firearms, and ammunition. *Id*. at 3-5. In his affidavit, Officer

Smith stated his belief that, among other things, cellphones, firearms, and ammunition would be found in Browner's vehicle.  Doc. 227-1 at 1-2.

According to Browner, these statements were false because her arresting officer took her cellphone, a firearm, and that firearm's ammunition at the time of her arrest and therefore these items would no longer be located inside of her vehicle.  Doc. 206 at 3-5.  But Browner has failed to provide any offer of proof beyond her own allegations that these items were in fact taken from her, or that even if they were taken from her, why that fact would render any of the statements in Officer Smith's affidavit false—Officer Smith stated that he believed *multiple* cellphones and firearms and their ammunition could be found.  Doc. 227-1 at 1-2.  And even if the arresting officer did take these items at the time of her arrest, Browner has further failed to show that the officer did not place them back in her vehicle.  Indeed, Trooper Fabbiani, Browner's arresting officer, testified that he does not recall Browner giving him a cellphone, firearm, or ammunition at the time of her arrest.  Doc. 227-3 ¶¶ 6-7.  He further testified that (1) if she had given him her cellphone, it is his "standard practice" to put the cellphone "back in the arrestee's vehicle," and (2) his "standard practice is not to take possession of firearms" or ammunition when arresting an individual at their vehicle and rather, "[i]t is [his] practice in situations like those occurring with Browner that firearms and ammunition remain in the vehicle for processing."  *Id*.  The proof thus contradicts Browner's allegations.

Finally, assuming *arguendo* that these statements were false, Browner has also failed to demonstrate that the "inclusion of the omitted facts"—that a cellphone, firearm, and ammunition had previously been confiscated—in the affidavit would have precluded

a finding of probable cause. *Kapordelis*, 569 F.3d at 1309. As the Government states, "the [a]ffidavit contains sufficient facts, with or without the alleged location of the firearm, ammunition, or cellphone, showing probable cause to support the [s]earch [w]arrant." Docs. 227 at 6; 227-1 at 2 (detailing Browner's alleged involvement in Rucker's murder and how her vehicle may contain evidence related to the murder).

Next, Browner argues the statements in Officer Smith's affidavit regarding the prostitution ad were false. Doc. 206 at 4. She asserts Officer Smith "knowingly placed this false information in the Affidavit" because "the photos of the prostitution ad in question … show that not only is the name Andrea Browner not on the ad described in this Affidavit, the phone number affiliated with the ad is not affiliated with that name either." *Id*. This conclusion is baseless. Officer Smith stated in the affidavit that law enforcement discovered Rucker "had just returned from a visit to a prostitute" at a hotel prior to his death, they located the prostitute's ad, and then "were able to determine that her name was Andrea Browner." Doc. 227-1 at 2. Officer Smith explains exactly how they determined it was Browner—an eyewitness, a mask in the ad's photo linked to Browner, hotel employees' statements, and the fact that the phone number Browner used to check into the hotel was linked to defendant Chambers, just like the phone number in the prostitution ad. *Id*. Browner has failed to show that the statements linking her to the prostitution ad were false and much less, that they negated probable cause.

Finally, Browner points out that Officer Smith mistakenly stated "Jason Vickers" instead of "Rodriguez Rucker" once in his affidavit. Doc. 206 at 4. The Government has conceded that this statement was a "scrivener's error." Doc. 227 at 8. However,

Browner has not shown that Officer Smith intentionally made this scrivener's error or that it had any effect on the issuing-judge's finding of probable cause. Indeed, "reading the affidavit's reference to" Jason Vickers to mean Rodriguez Rucker, "the affidavit established clearly" that Browner may be linked to the murder of Rucker and that her vehicle may contain evidence of the murder. *United States v. Snyder*, 471 F. App'x 884, 885-86 (11th Cir. 2012); *United States v. Woods*, 506 F. App'x 979, 981 (11th Cir. 2013). Therefore, Browner has failed to show that Officer Smith's mistaken reference to Jason Vickers negates the finding of probable cause.

### B. *Franks* Hearing

The Supreme Court held in *Franks* that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held." 438 U.S. at 155-56. *Franks* requires an initial showing by the movant that is "more than conclusory." *Id*. at 171. Indeed, a defendant's allegations "must be accompanied by an offer of proof" and "point out specifically the portion of the warrant affidavit that is claimed to be false." *Id*. As explained above, Browner makes no such showing here. Her attacks have been mostly conclusory, she has not made any substantive allegations of "deliberate falsehood," and she has failed to accompany her allegations with any proof other than her own "affidavit." Accordingly, a *Franks* hearing is not appropriate.

## IV. CONCLUSION

Accordingly, Browner's motion to suppress and request for a *Franks* hearing (Doc. 206) are **DENIED**. The evidence obtained in the execution of the search warrant on her vehicle is not suppressed.

**SO ORDERED**, this 12th day of July, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
